IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David B. Clinkscale,

       Petitioner,

      v.                        Case No. 2:13-cv-1111

Warden, Lebanon Correctional Institution,    JUDGE EDMUND A. SARGUS
                                        Magistrate Judge Kemp

       Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on that petition, the exhibit thereto, respondent's return of writ, the exhibits attached to the return, and petitioner's traverse.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.  Petitioner's request for discovery and an evidentiary hearing is **DENIED**.

## I.  PROCEDURAL HISTORY

### A.  Original Indictment, Trial, Appeal, and Collateral Proceedings

On September 29, 1997, a Franklin County, Ohio grand jury returned an eight-count indictment against petitioner, charging three counts of aggravated murder, one count of attempted aggravated murder, one count of aggravated burglary, two counts of aggravated robbery, and one count of kidnapping.  *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 1.*  Each count included a firearm specification, and the aggravated murder counts included additional death penalty specifications.  *Id.*  In preparation for the trial, petitioner had the assistance of a publicly-funded investigator.  *State v. Clinkscale*, 2011-Ohio-6385, ¶3 (Ohio Ct. App., Franklin Cty. 2011).  On October 2, 1998, Petitioner proceeded to trial, and on October 16, 1998, the jury returned verdicts finding Petitioner not guilty of Count One of the Indictment and guilty on all other counts.  *Id.,*

*Exhibit 2*.  In a judgment entry dated November 4, 1998, the Court sentenced petitioner to imprisonment for life without parole plus fifty-three years.  *Id., Exhibit 2*.

Petitioner appealed and his convictions and sentence were affirmed by the Tenth District Court of Appeals.  *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 3*.  The Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  *Id., Exhibit 4*.  Petitioner also filed a motion for leave to file a motion for a new trial, which the trial court denied.  *Clinkscale v. Carter*, 375 F.3d 430, 435 (6th Cir. 2004).  The Ohio Court of Appeals affirmed the trial court and the Ohio Supreme Court denied petitioner's petition for review.  *Id.*

On April 25, 2001, petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio.  *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 5*.  The District Court denied petitioner's petition for writ of habeas corpus and dismissed the case.  *Id.*  On July 8, 2004, the Court of Appeals reversed and granted petitioner a new trial.  *Id., Exhibits 5 & 6*.

### B.  Second Trial and Appeal

On September 11, 2006, petitioner's retrial began.  *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 7*.  Once again, he had the assistance of a publicly-funded investigator.  *State v. Clinkscale*, 2011-Ohio-6385, at ¶4.  The jury returned a verdict of guilty for all seven counts that were retried.  *Id., Exhibits 7 & 8*.  The court imposed a sentence of imprisonment for a total of 53 years to life.  *Id., Exhibits 7 & 8*.  Petitioner's convictions and sentence were affirmed on direct appeal, but the Ohio Supreme Court reversed, vacated the retrial, and remanded the case to the trial court.  *Id., Exhibits 9 & 10*.

### C.  Third Trial and Direct Appeal Proceedings

On August 11, 2010, before the third trial and following the Ohio Supreme Court's remand, petitioner filed a motion requesting investigatory fees in an amount not to exceed $1,500.  *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 11*.  He sought these fees in order to retain an investigator to interview witnesses.  *Id., Exhibit 11*.  On the same day, the trial Court approved funds in the amount of zero dollars.  *Id., Exhibit 12*.

On September 24, 2010, petitioner filed a notice of alibi, and on October 7, 2010 he amended his notice of alibi to provide additional details. *Id., Exhibits 13 & 14.*

On October 22, 2010, Petitioner's third trial commenced. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 16.* Petitioner was found guilty of the seven counts that were retried. *Id., Exhibit 16.* On November 5, 2010, petitioner filed a motion for a new trial. *Id., Exhibit 15.* On November 8, 2010, following oral arguments, the court denied the motion for a new trial. *Id., Tr. Vol. VIII, p. 1472.* Following the court's ruling, the court sentenced petitioner to a total term of forty-eight years to life imprisonment. *Id., Exhibit 16.*

On December 2, 2010, petitioner, through counsel, appealed this decision to the Franklin County, Ohio, Tenth Appellate District. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 17.* Petitioner raised seven assignments of error as follows:

I.    The trial court abused its discretion when it failed to find the Defendant indigent and provide funding for an investigator.

II.   The trial court erred in not providing funds for a private investigator in violation of Appellant's right to due process under the Fifth Amendment to the federal constitution and his Sixth Amendment right to counsel under the Sixth Amendment both made applicable to the States by the Fourteenth Amendment.

III.  The State of Ohio engaged in numerous instances of prosecutorial misconduct, the cumulative effect denied the Appellant of due process as guaranteed by the Fifth Amendment of the United States Constitution made applicable to the States by the Fourteenth Amendment.

IV.   The convictions in this matter were not supported by sufficient evidence in violation of Appellant's Fifth Amendment right to due process made applicable to the States by the Fourteenth Amendment of the federal constitution.

V.    The trial court violated the Appellant's right to confrontation guaranteed by the Sixth Amendment to the federal constitutiona [sic] made applicable to the States by the Fourteenth Amendment

by not allowing counsel to fully cross examine Rhonda Parker about her husband's drug dealing enterprise.

VI. The trial court committed plain error when it allowed testimony from Rhonda Callawander regarding the freshness of a fingerprint in violation of *Daubert v. Dow Pharmaceuticals* adopted by the Ohio Supreme Court in *Miller v. Bike Athletic*.

VII. The trial court abused its discretion when it overruled Appellan[t's] motion for a new trial.

*Id., Exhibit 18.* The State filed a brief in response, and petitioner filed a reply. *Id., Exhibits 19 & 20.* On December 13, 2011, the Court of Appeals of Ohio, Tenth Appellate District, overruled petitioner's seven assignments of error and affirmed the trial court judgment. *Id., Exhibit 21.*

On January 18, 2012, petitioner, through the same counsel, appealed the Court of Appeals of Ohio decision to the Ohio Supreme Court. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibits 22 & 23.* In his memorandum of support, he raised four propositions of law, as follows:

1. The trial court erred in not providing funds for a private investigator in violation of Appellant's right to due process under the Fifth Amendment to the federal constitution and his Sixth Amendment right to counsel under the Sixth Amendment both made applicable to the States by the Fourteenth Amendment.

2. The State of Ohio engaged in numerous instances of prosecutorial misconduct, the cummalative [sic] effect denied the appellant of due process as guaranteed by the Fifth Amendment of the United States Constitution made applicable to the States by the Fourteenth Amendment.

3. The trial court violated the Appellant's right to confrontation guaranteed by the Sixth Amendment to the federal constitutiona [sic] made applicable to the States by the Fourteenth Amendment by not allowing counsel to fully cross examine Rhonda Parker about her husband's drug dealing enterprise.

-4-

4.      The convictions in this matter were not supported by sufficient evidence in violation of Appellant's Fifth Amendment right to due process made applicable to the States by the Fourteenth Amendment of the federal constitution.

*Id., Exhibit 23.* The State filed a memorandum in opposition to jurisdiction. *Id., Exhibit 24.* On April 4, 2012, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. *Id., Exhibit 25.*

## D. Collateral Proceedings relating to the Third Trial

While the direct appeal from petitioner's conviction and sentence was pending, he also filed a petition to vacate or set aside judgment of conviction or sentence pursuant to ORC 2953.21. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 26.* He filed the petition on July 6, 2011, alleging four grounds for relief, as follows:

I.      Petitioner was denied effective assistance of counsel for failing to locate Bryan Fortner.[1]

II.     Trial counsel was ineffective in failing to call exculpatory witnesses for the petitioner.

III.    Allowing testimony of a witness who uses marijuana is a violation of petitioner's Fifth Amendment right to due process.

IV.     Actual innocence as a violation of the Eighth and Fourteenth Amendments to the federal constitution.

*Id., Exhibit 26.* On August 16, 2011, the State filed an answer and motion to dismiss the post-conviction petition. *Id., Exhibit 27.* On October 13, 2011, the trial court dismissed the petition as having no basis in law or fact, stated that it was doing so without an evidentiary hearing because petitioner had not presented sufficient credible evidence to

---

[1] Mr. Fortner's first name is sometimes spelled "Bryan" and sometimes "Brian" in the briefs and previous opinions. When quoting another source, the Court will use whichever spelling is used in that quotation; otherwise, the Court will spell his name "Brian" as it is spelled in the affidavit of Brian Fortner, which is attached to the petition. *Petition (Doc. 2), Exhibit 1.*

warrant a hearing, and stated, "[f]urthermore, res judicata bars any claim that could have been raised at trial or on direct appeal." *Id., Exhibit 28.*

On November 10, 2011, petitioner, through counsel, appealed the denial of his post-conviction petition. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 29.* In his supporting memorandum, he raised two assignments of error, as follows:

1. Petitioner was denied effective assistance of counsel for failing to locate Bryan Fortner and present his testimony to the jury.

2. The trial court abused its discretion when it dismissed Appellant's petition without an evidentiary hearing.

*Id., Exhibit 30.* On February, 6, 2012, the State filed a brief in response. *Id., Exhibit 31.* On June 26, 2012, the Court of Appeals of Ohio, Tenth District, affirmed the judgment of the trial court. *Id., Exhibit 32.*

On August 6, 2012, petitioner, proceeding pro se, filed a notice of appeal to the Ohio Supreme Court. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 33.* In his memorandum in support of jurisdiction, petitioner set forth two propositions of law, as follows:

I. Appellant was denied the effective assistance of counsel for his failure to locate prospective witness Bryan Fortner to present testimony to the jury.

II. The trial court abused its discretion when it dismissed the Appellant's post conviction petition without an evidentiary hearing.

*Id., Exhibit 34.* On August 29, 2012, the State filed a memorandum in opposition to jurisdiction. *Id., Exhibit 35.* On November 7, 2012, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. *Id., Exhibit 36.*

## II. FACTS

The facts of the underlying offense are stated in the state court of appeals'

opinion deciding the direct appeal to the third trial.  This is how the state court of appeals described the evidence at trial:

{¶ 1} Defendant-appellant, David B. Clinkscale ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which convicted him of charges pertaining to a September 1997 shooting that injured Todne Williams and killed her husband, Kenneth Coleman. For the following reasons, we affirm.

I. BACKGROUND

. . .

{¶ 6} At trial, Williams testified as follows. In September 1997, Williams and Coleman were living at 1261 Mooberry Street in Columbus, Ohio. Coleman kept a dog for dog-fighting. He also gambled large amounts of money, and he kept cash in a bedroom safe. Appellant and Coleman met each other while they were growing up in Youngstown, Ohio, and they became friends. Appellant's nickname is "Silk." (Tr. Vol.I, 95.)

{¶ 7} During the weekend of September 6, 1997, Coleman and a group of people went to Kentucky for a dog fight. At trial, Williams identified appellant as one of the men in the group. Coleman, appellant, and another man, later known to Williams as Darry Woods ("Darry"), returned to the Mooberry house on September 7, 1997 around 11:00 p.m. The men played video games, and Williams went upstairs to be with her children. At one point, Coleman came upstairs to get some money because he was gambling on a video game. Later, Williams heard a gunshot, and, within seconds, appellant came to her bedroom with a nine-millimeter gun, which had "smoke coming out of it." (Tr. Vol.I, 122.) Appellant was in a rage and demanded money. Williams told appellant to talk to Coleman, but appellant said he could not do that. Next, Darry came into the room and held the gun on Williams while appellant carried out a safe from the closet. Appellant returned and told Williams to go downstairs. Appellant ordered Williams to lie next to Coleman, but Williams tried to escape and then began struggling with appellant. Appellant fired three shots at Williams. Williams tried to block the shots with her arms, and one of the shots shattered a bone in one of her arms. Williams called 911 after appellant and Darry left. When the 911 operator asked who the shooter was, Williams said, " 'I don't know.' " (Tr. Vol.I, 195.) But Williams explained at trial that she was scared and focused on getting help.

{¶ 8} Detective Timothy Huston testified that he was a patrol officer on September 8, 1997, when he and Officer Brian Kaylor responded to the shooting scene. He also testified as follows. He and Kaylor arrived at the scene around 4:00 a.m., which was less than one minute from when they were dispatched there. Williams said that the attackers were two black males and that she had previously seen one of them with Coleman. Kaylor testified that Williams was hysterical when he and Huston arrived at the scene. He also said, "I recall her saying * * * she did not know the shooter." (Tr. Vol.IV, 726.)

{¶ 9} Detective Robert Viduya investigated the shooting and testified as follows. Williams told him that the shooter's first name was David and that Coleman's mother would know his full name. Viduya called Coleman's mother, and she told him that David Clinkscale was the name of her son's friend. Viduya showed Williams a photograph of appellant, and Williams said, "'Hey, that's the shooter. That's David.'" (Tr. Vol.IV, 662.) Williams identified Darry in a photo array as appellant's accomplice. She had previously identified other individuals as appellant's accomplice, but she was not as certain about those other identifications as she was with the one she made of Darry. She said she was "'a hundred percent sure'" of her identification of Darry. (Tr. Vol.IV, 702.)

{¶ 10} Larry Tate, a former deputy coroner, testified that Coleman died as a result of a gunshot wound to his head. Mark Hardy, a forensic scientist for the police department, testified that four spent nine-millimeter gun shell casings found at the scene were fired from the same semiautomatic weapon. Dr. Raman Tejwani and Debra Lambourne, also forensic scientists, testified that appellant's DNA was on a ball cap found at the scene.

{¶ 11} Rhonda Cadwallader, a fingerprint examiner for the police department, testified as follows. Appellant's fingerprints were on a Playstation Game Day '98 booklet found at the scene of the shooting, and his thumbprint was on a video game controller found at the scene. The thumbprint "pops up because it still had moisture * * *. There was still perspiration." (Tr. Vol.III, 525.) Also, "there was no evaporation of the perspiration. And that's why the lines are so dark and so complete." (Tr. Vol.III, 525.) Cadwallader could not give an exact age of the thumbprint, and she indicated that the print could have been left there a number of days before or longer. But she testified, "I just know from my training and my experience and looking at latent prints every day that a print this dark

and detailed is one that had not been there for a while." (Tr. Vol.III, 525.) In addition, she said, based on her training and experience, "I can tell the difference between a print that was newly deposited rather than a print that had exhibited some deterioration. In my opinion, this print did not exhibit any deterioration at all. It had clear ridge detail. It wasn't blurred or distorted. So, in my opinion that was newly deposited." (Tr. Vol.III, 549.) She also said that there were no other prints superimposed over the print, and, therefore, it is reasonable to conclude that appellant was the last person to touch the controller.

{¶ 12} Next, the prosecution introduced the following testimony of appellant from his first trial. Appellant and a man he referred to as Jerome Woods drove from Youngstown to Columbus in September 1997 to visit Coleman. During that visit, the group went to Kentucky for a dog fight. After the fight, appellant drove back to Columbus with Jerome. Coleman was in a separate car, and appellant never saw him again. It was now September 7, 1997, and appellant and Jerome spent some time in Columbus before returning to Youngstown later that day. In Youngstown, appellant went to the home of his cousin, Bryan Fortner, to watch a football game. Appellant slept with his girlfriend, Rhonda Clark, at Fortner's house. He went to his parents' home around 5:30 a.m. the next morning.

{¶ 13} During his testimony, appellant verified that his nickname is "Silk." (Tr. Vol.V, 900.) He also admitted that the blue ball cap found at the scene was his. He claimed that he left it in Kentucky, and Coleman must have brought it to Columbus.

{¶ 14} Rhonda Parker testified as follows. She had dated appellant before she married another man. She was not with appellant on September 7 or 8, 1997. In fact, she did not even meet him until a couple of weeks later. Nevertheless, appellant asked Parker to tell police that she was with him watching football and sleeping together on the night of the shooting, and she conveyed that story to an investigator for the defense. When a police detective interviewed her later, however, she said that she was not with appellant on the night of the shooting and did not even know him then. She also refused to support the alibi in 2000 when a defense attorney contacted her. She told the attorney that she would not lie.

{¶ 15} The trial court did not allow defense counsel to cross-examine Parker with questions regarding the fact that her husband, whom she met

in February 1999, was on federal parole from 1996 to 2001 and was convicted for selling drugs between September 2004 and September 2006 at a beauty supply shop he and Parker owned. The court also prohibited defense counsel from questioning Parker on whether she was cooperating with the prosecution to appease law enforcement after property in her shop was confiscated in a raid related to the prosecution of her husband for drug trafficking. The court concluded that any relevance of the information appellant wanted to elicit was "overwhelmingly outweighed by the prejudicial effect." (Tr. Vol.V, 1020.) The court allowed defense counsel to question Parker generally about whether she expected to benefit from testifying, but counsel did not do so.

{¶ 16} After the prosecution rested its case-in-chief, the defense called Arthur Clinkscale, appellant's father, who testified that appellant came to his home at 5:45 a.m. on September 8, 1997, and that at some point in 1998, an investigator for the defense interviewed Parker and Fortner. Next, Darry testified as follows on appellant's behalf. Appellant referred to Darry by the name "Jerome." (Tr. Vol.VI, 1207.) Appellant and Darry lived in Youngstown, and they visited Coleman in Columbus during the early part of September 1997. After the visit, on September 7, 1997, they were back in Youngstown around 6:00 or 6:30 p.m. Later that night, Darry went to Fortner's house to watch a football game, and appellant was at the house, too. Darry left the house around 9:30 or 10:00 p.m. Although Darry maintains his innocence, he pleaded guilty to a charge pertaining to the shooting. He wrote a letter to a judge seeking judicial release. In the letter, he said that his family and the victim's family had suffered because of his inability to " 'make the proper decision at the proper time.' " (Tr. Vol.VI, 1260.) Lastly, Darry testified that, although he did not know of Fortner's whereabouts, Fortner's mother has seen him.

{¶ 17} During closing argument, the prosecutor asked, "Wouldn't it have been a better alibi to have [appellant's] mom testify, too? Maybe mom wouldn't." (Tr. Vol.VII, 1342.) Defense counsel objected, and the trial court overruled it. The prosecutor also asked, "Did you hear anything about * * * Fortner? He was the front end of the alibi * * *. He came to that meeting at the parents, but where is he today?" (Tr. Vol.VII, 1351.) Defense counsel objected, and the trial court sustained the objection.

{¶ 18} In addition, the prosecutor stated, without objection, "The fingerprint on the controller, what did Rhonda Cadwallader tell you? Not just it's [appellant's] print. She told you it was fresh. * * * She told you

there—a fingerprint is 95 percent water. No evaporation had occurred."
(Tr. Vol.VII, 1337–38 .) Furthermore, the prosecutor said, without
objection, that appellant, Darry, and Fortner were "thick as thieves" and
that they were "buds" and "like brothers." (Tr. Vol.VII, 1347–48.)

{¶ 19} As part of its general charge to the jury, the court said that closing
arguments "are not evidence." (Tr. Vol.VII, 1356.) After deliberation, the
jury found appellant guilty of the charges and specifications.

*State v. Clinkscale*, 2011-Ohio-6385 (Ohio Ct. App., Franklin Cty 2011).

### III. PETITIONER'S HABEAS CLAIMS

Petitioner filed his habeas corpus petition in this Court on November 6, 2013.  In

his petition, he raised the following grounds for relief, stated here exactly as they

appear in the petition:

First Ground:

PETITIONER, DAVID CLINKSCALE, WAS DENIED HIS RIGHT TO
DUE PROCESS AND A FAIR TRIAL GUARANTEED TO HIM UNDER
THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION WHEN THE TRIAL COURT DENIED
HIS REQUEST FOR FUNDS FOR A PRIVATE INVESTIGATOR TO
LOCATE A SPECIFIC WITNESS WITH KNOWLEDGE TO SUPPORT
THE DEFENDANT'S ALIBI DEFENSE.

Second Ground:

PETITIONER, DAVID CLINKSCALE, WAS DENIED EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN
TRIAL COUNSEL FAILED TO LOCATE AND CALL PETITIONER'S
ALIBI WITNESS, BRYAN FORTNER, TO TESTIFY AT TRIAL.

Third Ground:

PETITIONER, DAVID CLINKSCALE, WAS DENIED EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN
TRIAL COUNSEL FAILED TO STATE THE SPECIFIC NECESSITY FOR
THE ADDITIONAL INVESTIGATIVE FUNDS, TO WIT, LOCATING

PETITIONER'S ALIBI WITNESS, BRIAN FORTNER, UNTIL THE
CONCLUSION OF TRIAL.

Fourth Ground:

PETITIONER, DAVID CLINKSCALE, WAS DENIED HIS RIGHT TO
DUE PROCESS AND A FAIR TRIAL GUARANTEED TO HIM UNDER
THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS AS WELL AS
THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO
THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT
FAILED TO ALLOW COMPLETE AND NECESSARY CROSS-
EXAMINATION OF THE STATE'S WITNESS, RHONDA CLARK.

Fifth Ground:

PETITIONER, DAVID CLINKSCALE, WAS DENIED HIS RIGHT TO
DUE PROCESS AND A FAIR TRIAL GUARANTEED TO HIM UNDER
THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE
SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION
BECAUSE THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO
SUSTAIN HIS CONVICTIONS.

*Petition for Writ of Habeas Corpus (Doc. 2)*.

Respondent filed an answer / return of writ *(doc. 8),* and petitioner filed a reply
(or traverse) *(doc. 13)*.  Respondent does not argue that the petition is untimely or that
petitioner has failed to exhaust.  Respondent argues that one of petitioner's grounds has
been procedurally defaulted and argues the remaining four grounds on the merits.

## IV.  LEGAL STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L.
104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review.  *See Penry v.
Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).
AEDPA imposes a "highly deferential standard for evaluating state-court rulings,"
*Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and "demands that state-court decisions
be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per

curiam); see also *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (footnote omitted) .

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To obtain habeas corpus relief, a Petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011), *quoting Harrington v. Richter*, 562 U.S. 86, ––––, 131 S.Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786, *quoting Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision."  *Id., quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In situations where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a Petitioner's claim *de novo.  Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.'  Thus, a federal habeas court reviews such unaddressed claims de novo.") (citing *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003)); *see also Pennington v. Jones*, 2006 WL 322474, at *2 (E.D. Mich. Feb. 10, 2006) (unpublished) (reviewing habeas Petitioner's claim *de novo* where he raised it for the first time in his petition).

In situations where the state courts adjudicate the merits of a claim but fail to articulate their reasoning or in situations where "the state court decision does not squarely address the federal constitutional issue in question, but its analysis bears 'some similarity' to the requisite constitutional analysis," a modified AEDPA standard of review is applied.  *Hargrave v. McKee*, 248 F. App'x 718, 725 (6th Cir. 2007) (quoting *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006)) (internal quotation marks and additional citations omitted).  "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law."  *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

Questions of state law are not reviewable in a federal habeas action.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' . . .  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).  Petitioner instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Estelle*,

502 U.S. at 68, 112 S.Ct. 475 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, the Sixth Circuit has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

## V. MERITS REVIEW

### A.  GROUND ONE

Petitioner's first ground for relief is that he was denied his right to due process and a fair trial when the trial court denied his request for funds for a private investigator to locate a specific witness with knowledge to support the petitioner's alibi defense. Questions of state law are not reviewable in a federal habeas action. *See Estelle*, 502 U.S. at 67-68. Accordingly, the question before the Court is whether, as petitioner contends, the trial court's decision violated his constitutional rights to due process and a fair trial. Specifically, the question is whether the guarantees of the Fifth, Sixth, and Fourteenth Amendment required the trial court to provide funds to petitioner so that he could hire an investigator to locate alibi witness Brian Fortner.

As respondent has pointed out, the seminal Supreme Court case regarding the rights of indigent defendants to have publicly funded services other than counsel is *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). In *Ake*, the Court discussed the general principles governing indigent defendants' constitutional rights to prepare an effective defense:

> Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, *see Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), it has often

-15-

> reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system," *id.*, at 612, 94 S.Ct., at 2444. To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them.

*Ake v. Oklahoma*, 470 U.S. 68, 77 (1985).  The Court then set forth three factors that are relevant to the determination: (1) the private interest that will be affected if the safeguard is to be provided; (2) the governmental interest that will be affected if the safeguard is provided; and (3) the probable value of the additional procedural safeguards sought and risk of erroneous deprivation of the affected interest if the safeguards are not provided.  *Id.*  The specific question before the Court in *Ake* was "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question."  *Id.* at 70.  The Court answered that question in the affirmative.  *Id.* at 83.

The Court of Appeals has applied the holding of *Ake* to non-psychiatric experts. *See Terry v. Rees*, 985 F.2d 283, 284 (6th Cir. 1993) (stating that *Ake's* reasoning extended to providing access to a pathologist where that was necessary to presenting an effective defense, but ultimately holding that the failure to provide access to a pathologist was harmless error in that case).  Other circuit courts have done the same.  *See, e.g., Little v. Armontrout*, 835 F.2d 1240, 1243 (8th Cir. 1987) ("We must first decide whether the rule of *Ake* should be applied at all in the present context, where the expert in question is not a psychiatrist, and the death penalty is not a possibility. We think the answer is yes. There is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of science or expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given."); *Moore v. Kemp*, 809 F.2d 702,

711-12 (11th Cir. 1987) ("We nonetheless assume, for sake of argument, that the due process clause could require the government, both state and federal, to provide nonpsychiatric expert assistance to an indigent defendant upon a sufficient showing of need.")

However, even when *Ake* has been extended to non-psychiatric experts, funding for the expert is not required in every instance. *Mason v. Mitchell*, 320 F.3d 604, 615-16 (6th Cir. 2003). For instance, in *Mason v. Mitchell*, the Court of Appeals upheld the district court's denial of the petitioner's petition for habeas corpus, and in doing so, it held that the Ohio Supreme Court did not act in an objectively unreasonable manner when it ruled that the denial of public funds for various experts and one "investigation expert" did not deny the petitioner's constitutional or statutory rights. *Id.* (citing *State v. Mason*, 1998-Ohio-370, 82 Ohio St. 3d 144, 149 (Ohio 1998)). The Court of Appeals noted that the Supreme Court of Ohio understood *Ake* to "require that a criminal defendant be provided [nonpsychiatric] expert assistance when necessary to present an adequate defense," and stated that its understanding of *Ake* was consistent with the principles articulated in *Ake*. *Mason*, 320 F.3d at 615 (citing *State v. Mason*, 1998-Ohio-370)). The Court of Appeals also concluded that the Supreme Court of Ohio was not objectively unreasonable in its application of *Ake* when it determined that trial courts have discretion in evaluating the probative value of the safeguard sought and the risk of an erroneous deprivation of the affected interest if the safeguard is not provided. *Mason*, 320 F.3d at 616 (citations omitted).

Here the Ohio Court of Appeals held as follows:

A. First and Second Assignments of Error

{¶ 23} In his first and second assignments of error, appellant argues that we must reverse his convictions because the trial court denied his August 11, 2010 request for a publicly-funded investigator. We disagree.

{¶ 24} The Supreme Court of Ohio has recognized that, pursuant to R.C. 2929.024, an indigent defendant in an aggravated murder case is entitled

to publicly-funded investigative services that are " 'reasonably necessary.'" *State v. Mason*, 82 Ohio St.3d 144, 150, 1998–Ohio–370. In determining whether to provide funding for an investigator, the court considers the value of the investigative assistance and " 'the availability of alternative devices that would fulfill the same functions.' " *Id., quoting State v. Jenkins* (1984), 15 Ohio St.3d 164, paragraph four of the syllabus. The decision to provide a publicly-funded investigator is made "'in the sound discretion'" of the trial court. *Mason* at 150, quoting *Jenkins*, paragraph four of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 25} Appellant claims that he is indigent and that, although he retained private counsel, he lacked sufficient means to pay for an investigator. To be sure, the fact that a defendant "has only the available funds to retain counsel * * * should not preclude the finding of indigency." *State v. Cham*, 10th Dist. No. 05AP–1288, 2007–Ohio–378, ¶ 19. Notwithstanding the issue of appellant's indigence, he has not demonstrated that the trial court abused its discretion when it denied his request for a publicly-funded investigator.

{¶ 26} When appellant filed the August 11, 2010 motion, he made a general claim that "[t]here are several witnesses that need to be interviewed and likely will be called at trial." It was reasonable for the trial court to deny that motion because appellant already had the benefit of two publicly-funded investigators for his first two trials and one publicly-funded investigator for his third trial. This is in addition to appellant having received assistance from eight former attorneys.

{¶ 27} Although appellant subsequently claimed that he needed a publicly-funded investigator to help him find his alibi witness, Fortner, he did not make this assertion in his August 11, 2010 motion. In any event, the record does not support that claim. The defense could have talked to Fortner's mother, who was in the courtroom during trial, and who, according to Darry, had seen Fortner. Appellant's privately-retained investigator was in the courtroom during the trial, so he was available to the defense at that time. And, even if Fortner were called to provide alibi testimony for appellant, the jury easily could have rejected that testimony because Parker indicated that the alibi was fabricated.

-18-

{¶ 28} For all these reasons, we conclude that the trial court did not abuse its discretion when it denied appellant's August 11, 2010 request for a publicly-funded investigator. Therefore, we overrule appellant's first and second assignments of error.

*State v. Clinkscale*, 2011-Ohio-6385. While the Ohio Court of Appeals did not specifically address the federal constitutional due process requirements, it relied heavily upon *State v. Mason*, which, as discussed above, specifically address the federal constitutional due process requirements. While the language that the decision quoted was discussing Ohio statutory requirements, the *Mason* decision did so in the larger context of the federal and state constitutional due process concerns. Where, as here, petitioner presented a constitutional claim to the state court and the court's inquiry bore some similarity to the requisite constitutional analysis, modified AEDPA deference is appropriate. *See, e.g., Hargrave v. McKee*, 248 F. App'x 718, 725 (6th Cir. 2007); *see also Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (citations omitted). "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476 (citations omitted).

The Ohio Court of Appeals decision here relies in large part upon the fact that publicly-funded investigators were provided to petitioner in his previous trials. In connection with his first trial, the trial court approved funds for an investigator to gather evidence, including to verify and corroborate petitioner's claimed alibi. *Clinkscale v. Carter*, 375 F.3d 430, 434 (6th Cir. 2004). That investigator interviewed petitioner and three other potential witnesses, one of whom was Brian Fortner. *Id.* The investigator prepared a report that provided that "Fortner confirmed that [petitioner] spent the evening with him at Fortner's home, that [Rhonda] Clark came over during the football game and that [petitioner] and Clark retired to an upstairs bedroom after the game." *Id.* The testimony of Fortner and other alibi witnesses was excluded

-19-

because the notice of alibi was not filed seven days prior to trial as required by the Rule 12.1. *Id.* at 435. Petitioner's first conviction was overturned on federal habeas corpus review because the Court of Appeals determined that counsel was ineffective for failing to timely file an alibi notice. The Court stated "[a]t least where - as here - alibi is a critical aspect of a defendant's defense, there is nothing reasonable about failing to file an alibi notice within the time prescribed by the applicable rules . . . ." *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004).

In preparation for the second trial, petitioner had the assistance of a publicly-funded investigator once again. *State v. Clinkscale*, 2011-Ohio-6385, at ¶4. During that trial, two of petitioner's three original alibi witnesses testified: his father testified in support of his alibi, and Rhonda Parker [previously Rhonda Clark] testified for the prosecution, stating that petitioner asked her to lie about his whereabouts the morning of the attack. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 9, ¶5.* The conviction resulting from that trial was ultimately vacated by the Supreme Court of Ohio because the trial court made an error in replacing a juror during deliberations and in failing to record the proceedings dismissing the juror. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 10.*

On August 11, 2010, before his third trial, petitioner filed a motion for investigatory fees, stating that "[t]here are several witnesses that need to be interviewed and likely will be called at trial." *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 11.* The trial court effectively denied that motion on the same day by granting the motion in the amount of $0. *Resp.'s Answer / Return of Writ (Doc. 8), Exhibit 12.* On October 22, 2010, Petitioner's third trial commenced. Petitioner's father testified in support of his alibi – in particular, testifying to petitioner's arrival at his home in Youngstown at 5:45 a.m. on September 8, 1997. *Trial Tr. (Doc. 8-8) at 1141:12 - 1142:22.* Rhonda Parker again testified that petitioner asked her to lie about his whereabouts the morning of the attack. *Trial Tr. (Doc. 8-7) at 989:18 - 993:2.* Brian Fortner was not called as a witness. In the prosecution's closing argument, counsel for the prosecution stated, "Did you hear

anything about Brian Fortner?  He was the front end of the alibi, and he was a very important alibi witness because he hadn't been to Columbus.  He may not have even known there had been a murder, that Todne was shot.  He was cleared.  He was clean. He was pristine.  He came to that meeting at the parents, but where is he today?"  *Trial Tr. (Doc. 8-9) at 1351:16-22.*  Defense counsel objected and the Court sustained the objection.  *Id. at 1351:*23 - 1352:1.

In support of his habeas petition, petitioner has provided an affidavit of Brian Fortner that states that he has been willing to testify on petitioner's behalf and that if he testified, he would state that petitioner came to his house on September 7, 1997 in the early evening, that petitioner and Fortner and their girlfriends watched a game on television, that petitioner and Rhonda Parker went upstairs prior to the end of the game and that petitioner did not leave the house until the next morning when he went to see his father.  *Affidavit (Doc. 2-1).*

Following a careful review of the record and applicable law, it appears that the Ohio Court of Appeals decision here was not "contrary to or an unreasonable application of federal law."  *Bey*, 500 F.3d at 520 (citations omitted).  The Ohio Court of Appeals ruled that petitioner's motion failed to make a showing that there was a need to locate Brian Fortner, but rather claimed generally, that "[t]here are several witnesses that need to be interviewed and likely will be called at trial."  Following two trials at which petitioner had the benefit of two publicly-funded investigators and where the alibi witnesses (including Brian Fortner) had been interviewed by an investigator, and absent a particularized showing of need, it was not unreasonable for the court to conclude that it was unnecessary to fund another investigator to interview several witnesses.

While there were various post-trial explanations for the motion, they were made after the motion was decided.  Following trial, while the jury was deliberating, the Court brought up the motion for investigator funds that it had denied and explained its reasoning for denying the motion.  *Trial Tr. (Doc. 8-9) at 1406:17 - 1407:18.*  In response,

-21-

counsel for petitioner explained the rationale for the motion as follows:

> [W]e asked the Court for funds because we knew critical importance to us was the location of Brian Fortner.  Mr. Fortner has apparently made significant efforts to either avoid us or both sides.  And we went through records.  We went through transcripts.  We went through all the discovery.  Tried to obtain every address possible for him.
>
> But without having an investigator to go out and devote time to tracking him down, we had no reasonable way of locating him.  So, that's why we came to the Court asking for funds. . . . And, as I indicated, because of funding and not being able to pay for further investigative services, we were unable to locate Mr. Fortner although we do have information he is here in Columbus.

*Trial Tr. (Doc. 8-9) at 1407:19 - 1408:11.*  This explanation was not in the context of a pending motion.

In addition, petitioner moved for a new trial, because, among other reasons, the trial court did not give the defense expense money to hire an investigator to locate alibi witness Brian Fortner.  The trail court permitted oral argument on that motion.  *Trial Tr. (Doc. 8-10) at 1447:6-13.*  The trial court ruled as follows:

> THE COURT:  Well, I'm going to deny the motion for reasons stated by Ms. Reulbach. And after two prior trials with complete transcripts, it seemed pretty unlikely that there would be any witnesses whose testimony wasn't already in -- on transcripts.
>
> There wasn't any particularized need for the investigator that was shown to the Court. There wasn't any request for a hearing or a meeting in chambers about a need to find a certain witness. And, in fact, the defense did have an investigator for a while. Mr. Gary Phillips worked on the case for a while.
>
> MS. REULBACH: Gary Phillips was here for the whole trial.
> THE COURT: So, I deny the motion for a new trial.

*Trial Tr. (Doc. 8-10) at 1472:15 - 1473:5.*  There the trial court once again noted that petitioner failed to show any particularized need for an investigator at the time the motion was filed.  Accordingly, the Ohio Court of Appeals' decision that no particularized need for investigator funds was demonstrated at the time of the motion and that, therefore, the trial court did not abuse its discretion is not contrary to or an

unreasonable application of federal law following *Ake*.  *See, e.g., Mason*, 320 F.3d at 615 (citing *State v. Mason*, 1998-Ohio-370)).

The Ohio Court of Appeals goes on to note that even if the motion had specifically requested investigator funds in order to locate Brian Fortner, which the motion did not do, counsel for defense could have located Brian Fortner without the assistance of an investigator, and, anyway, the jury could have rejected Fortner's testimony in light of the testimony of Rhonda Parker who testified that petitioner asked her to falsely testify about his whereabouts.  However, this Court need not consider this alternative argument because the primary rationale provided by the Ohio Court of Appeals was not an unreasonable application of federal law.

Accordingly, Ground One fails to set forth a basis for granting habeas relief to petitioner.

## B.  GROUND TWO

In his second claim for relief, petitioner presents a claim for ineffective assistance of counsel, arguing that his counsel failed to locate and call petitioner's alibi witness, Brian Fortner, to testify at trial.  Petitioner raised this claim in his post-conviction motion for relief pursuant to section 2953.21.

While this claim will be considered on the merits, it is worth addressing the issue of res judicata before proceeding.  "In Ohio, res judicata has long been held to bar consideration of constitutional claims in post-conviction proceedings brought under Ohio Rev. Code Ann. section 2953.21 when those claims have already been or could have been fully litigated either before judgment or on direct appeal from that judgment."  *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002) (citations omitted). Ineffective assistance of trial counsel claims are barred by res judicata "when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record."  *Id.* at 577 (citation omitted).  However, here petitioner did present evidence outside the record, and the state courts did not rely

-23-

upon res judicata as a procedural bar to petitioner's claim.  Rather, while both the trial court and the appellate court mention the doctrine of res judicata, each decided the issue on the merits.  Respondent also concedes that this ground for relief is entitled to review on the merits and has not been procedurally defaulted.  *Return of Writ (Doc. 8) at 25*.  Accordingly, this ground for relief will be considered on the merits.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The court in *Strickland* announced the now familiar two-prong test to determine if there was ineffective assistance of counsel, which would result in reversible error:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance [ ... ]."  *Id*. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

The United States Supreme Court has recently cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."  *Harrington v. Richter*, 562 U.S. 86, - - -, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).  The Court observed that while "'[s]urmounting *Strickland*'s

high bar is never . . . easy.' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult . . . ." *Id.* (*quoting Padilla v. Kentucky*, 559 U.S. 356, ––––, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010) and citing *Strickland*, 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The last reasoned decision of the state court regarding this ground was the Ohio Court of Appeals decision affirming the trial court's denial of petitioner's petition to vacate or set aside the judgment of conviction or sentence. The Ohio Court of Appeals addressed that ground for relief as follows:

> {¶ 24} According to appellant, while counsel in his first trial was ineffective for failing to provide a timely notice of an alibi, counsel in his third trial was ineffective for failing to locate and subpoena alibi witness, Bryan Fortner. In support of his contention, appellant attached an affidavit from Fortner, stating in pertinent part:

>> 8. Affiant states that he has never been called to testify in the matter of State of Ohio versus David Clinkscale.

>> 9. Affiant states that he has been willing to testify on behalf of David Clinkscale.

> (Fortner Affidavit at 1.)

> {¶ 25} Problematic for appellant is that this affidavit fails to demonstrate sufficient operative facts establishing counsel substantially violated at least one of the attorney's essential duties to his client and that he was prejudiced as a result. *State v. MesserTomak*, 10th Dist. No. 10AP–847, 2011–Ohio–3700, ¶ 12, citing *[State v.] Cole* [2 Ohio St. 112] at 114 [(1982)].

{¶ 26} After the jury's verdict was read in open court and the jury was dismissed, the trial court made a record of the reasons it denied appellant's request for investigative fees at state expense. Appellant's counsel stated, "we asked the Court for funds because we knew critical importance to us was the location of Br[y]an Fortner. Mr. Fortner has apparently made significant efforts to either avoid us or avoid both sides. And we went through records. We went through transcripts. We went through all the discovery. Tried to obtain every address possible for him." (Emphasis added.) (Oct. 22, 2010 Tr. Vol. VII, 1407–08.) Thus, the record reflects that not only was appellant's trial counsel aware of Fortner, but also, that counsel tried to locate Fortner so that Fortner could be called as a witness in appellant's third trial.

{¶ 27} Though Fortner's affidavit states despite his willingness, he was not called to testify in any of appellant's trials, the affidavit does not demonstrate any operative facts to support appellant's claim that his counsel was ineffective in failing to locate and call Fortner as a witness. As indicated, the record reflects that counsel made efforts to locate Fortner and that it was counsel's belief that Fortner was intentionally making efforts to be elusive. Significantly, Fortner's affidavit does not identify any reasonable steps appellant's trial counsel could or should have taken that would have resulted in Fortner being located. Nor does Fortner's affidavit indicate he made himself available during appellant's third trial so that he could be called as a witness. In light of this record, to warrant the requested relief, appellant must provide some example with supporting evidence of reasonable efforts, beyond those already taken by counsel, that would have resulted in counsel having the ability to locate Fortner and call him as a witness. "By failing to present sufficient operative facts indicating the extent of investigation counsel undertook, defendant failed to present sufficient facts that her trial court's investigation of the case was deficient." *Messer–Tomak* at ¶ 15.

{¶ 28} Because appellant failed to present sufficient operative facts that his trial counsel provided ineffective assistance, he failed to establish substantive grounds for a hearing or for relief on his claim of ineffective assistance of counsel based on counsel's inability to locate and call Fortner as a witness. Therefore, we do not find the trial court abused its discretion in dismissing appellant's petition for post-conviction relief without a hearing.

. . .

{¶ 31} For the foregoing reasons, we find appellant's arguments to be without merit, and we overrule appellant's two assignments of error.

*State v. Clinkscale*, 2012-Ohio-2868 appeal not allowed, 2012-Ohio-5149, 133 Ohio St. 3d 1466, 977 N.E.2d 694 (Ohio Ct. App. 2012). In so ruling, the Ohio Court of Appeals applied the *Strickland* standard, *see Clinkscale*, 2012-Ohio-2868 at ¶22, and concluded that petitioner failed to show that counsel's performance was constitutionally deficient by failing to provide evidence that counsel's efforts to locate Brian Fortner and call him as a witness were unreasonably deficient. The Ohio Court of Appeals makes an objectively reasonable argument that counsel satisfied *Strickland's* deferential standard in trying to locate Brian Fortner. Petitioner is, therefore, not entitled to habeas relief based on the ineffective assistance of counsel claim articulated in Ground Two of petitioner's habeas petition.

## C.  GROUND THREE

In Ground Three, petitioner presents an additional claim for ineffective assistance of counsel, arguing that his counsel failed to state the specific necessity for the additional investigative funds when presenting the motion for such funds to the court. Respondent argues that this claim has been procedurally defaulted.

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. Procedural default can be a fairly complicated doctrine, involving a number of court-made rules and exceptions, but the basic premise is simple and is reflected in the language Congress has used in 28 U.S.C. §2254.

Under §2254, a federal court may grant relief to a state prisoner only if that person is being held in custody in violation of the Constitution or law of the United States—that is, that the prisoner's conviction or sentence was unlawful under federal

law.  In order for a federal court to decide any claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  That is so because §2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State...."

One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [petitioner's] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the Petitioner must demonstrate that there was cause for him not to follow

the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Here, respondent argues that petitioner did not present this particular claim for ineffective assistance of counsel on direct appeal, nor did he present it in his post-conviction motion for relief pursuant to section 2953.21.  Petitioner argues that this claim is interrelated with Ground Two and "can be viewed with the same analysis insofar as counsel would have adequately disposed of his duty to Petitioner in locating and calling Brian Fortner to testify had he properly specified the necessity for the private investigator in his pretrial motion."  *Traverse (Doc. 13) at 6*.  While petitioner is correct that Ground Three could have been argued as a part of Ground Two, the problem remains that petitioner did not argue that counsel was ineffective for failing to make a showing of need for the investigative funds, nor did petitioner demonstrate that counsel's performance was constitutionally defective for failing to do so.  To fairly present a federal claim, a petitioner must "assert[] both the factual and legal basis for his claim to the state courts."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002) (holding that petitioner's claims in federal habeas were procedurally defaulted because they rested on different theories than those presented to the state courts) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)) *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002).  In petitioner's original post-conviction motion pursuant to section 2953.21, he argues that "[c]ounsel was rendered ineffective by the trial court's unwillingness to provide a small amount for an investigator," *post-trial mot. (Doc. 8-2) at page 148 of 348*, and when he appealed the court's denial of that motion, he argued that "counsel did not investigate the whereabouts of Brian Fortner."  *Appellant's Br. (Doc. 8-2) at page 225 of 348*.  Accordingly, the state courts did not have the opportunity to consider whether counsel's failure to state the specific necessity for the additional investigative funds constituted an unconstitutional failure on counsel's part to locate alibi witness Brian Fortner.

-29-

As discussed briefly in the preceding section, "[i]n Ohio, res judicata has long been held to bar consideration of constitutional claims in post-conviction proceedings brought under Ohio Rev.Code Ann. section 2953.21 when those claims have already been or could have been fully litigated either before judgment or on direct appeal from that judgment." *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002) (citations omitted). Ineffective assistance of trial counsel claims are barred by res judicata "when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record." *Id.* at 577 (citation omitted).

Turning to the four factors of the *Maupin* test, the state courts were never given the opportunity to enforce res judicata as to this claim because the claim was never presented to the state courts. It might have been raised on direct appeal, or, to the extent that this claim might involve evidence not readily apparent from the face of the record, it would be properly raised in a petition for post-conviction relief pursuant to O.R.C. § 2953.21. However, it does not appear from the record that petitioner ever presented such an issue in his post-conviction petition. Further, any attempt now to present such claim to the state courts in an untimely and successive petition would most certainly be barred.[2] The Court therefore deems the first and second parts of

---

[2] O.R.C. § 2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in

*Maupin* to have been met with respect to petitioner's claim.  The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of res judicata, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  The doctrine of res judicata is stated in unmistakable terms in countless Ohio decisions, and Ohio courts

------

division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an inmate for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

The record does not reflect that petitioner could meet these requirements.

-31-

have consistently refused, in reliance on that doctrine, to review the merits of claims. *See, e.g., State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982).  Further, the doctrine of res judicata serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  With respect to the independence prong, the Court concludes that res judicata does not rely on or otherwise implicate federal law.  Finally, petitioner has not demonstrated that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.   As a result, Ground Three has been procedurally defaulted.

### D.  GROUND FOUR

Petitioner's fourth ground for relief is that petitioner was denied his right to due process and a fair trial pursuant to the Fifth, Sixth, and Fourteenth Amendments when the trial court failed to allow complete and necessary cross-examination of the state's witness, Rhonda Clark, who is now named Rhonda Parker.  Rhonda Parker was originally going to be one of petitioner's alibi witnesses, but she never testified for petitioner, and instead, she testified for the State.  She testified that petitioner had asked her to say that she was with him on the night of the murder even though she was not. *Trial Tr. (Doc. 8-7) at 989:18 - 991:18*.  According to her trial testimony, she originally agreed to testify falsely on petitioner's behalf because she thought he was innocent, and she told an investigator for the defense the story that petitioner had told her to say; however, when a police officer came to question her later, she told the police officer that petitioner wasn't with her at the time of the murder because she did not yet know him at that time. *Trial Tr. (Doc. 8-7) at 990:20 - 997:20.*  The question here is whether petitioner had a constitutional right to cross examine Rhonda Parker as to her husband's indictment and prosecution in order to ask follow up questions about whether she changed her story in order to obtain some benefit for her husband.  This issue was presented to the Ohio Court of Appeals in petitioner's direct appeal, and the Ohio Court of Appeals addressed that claim on the merits.

"The Sixth Amendment to the Constitution guarantees the right of an accused in

a criminal prosecution 'to be confronted with the witnesses against him.'"  *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974).  The primary purpose of this right is to provide an accused with the opportunity to cross-examine witnesses.  *Id.* at 315.  The Supreme Court has described the importance of cross-examination as follows:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.  One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness.  By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony.  The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness.  A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.  The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'  3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970).  We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.  *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

*Davis*, 415 U.S. at 316-17 (footnote omitted).

In cases "involving trial court restrictions on the scope of cross-examination, the [Supreme] Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Delaware v. Fensterer*, 474 U.S. 15, 19, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (ellipsis in original) (quoting *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968)). However, judges constitutionally retain wide latitude "to impose reasonable limits on . .

-33-

. cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed.2d 674 (1986). The confrontation does not protect all cross-examination questions, but rather, "the Constitution guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 594 (6th Cir. 2012) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original)).

In this case, the trial court limited the cross-examination because it determined that the line of questioning was speculative and would be prejudicial, and because adequate cross-examination was allowed into the question of Rhonda Parker's motive for testifying:

> {¶ 31} In his fifth assignment of error, appellant argues that the trial court erred by limiting his cross-examination of Parker. On direct examination, Parker testified that she received no benefit for testifying, other than mileage reimbursement and a lunch voucher. On cross-examination, defense counsel attempted to ask Parker whether her husband, Benjamin Parker, who had been indicted in a federal case for trafficking drugs from a business they owned, would benefit from her testimony. The prosecutor objected, contending that the question of benefit to Parker's husband was purely speculative, lacked a good-faith basis, and would be prejudicial.
>
> {¶ 32} Defense counsel also sought to question Parker about a connection between the timing of her decision to testify for the defense and her husband's indictment and prosecution. Again, the prosecutor objected based on speculation and relevance.
>
> {¶ 33} As to whether defense counsel could ask Parker about a possible benefit to her husband, the court said that the request was based on "total speculation" and counsel had no "reason to believe that her husband is getting anything from the feds. Certainly isn't getting anything from the County Prosecutor's Office." (Tr. Vol.V, 1013.) Defense counsel said that such a deal could occur, but offered no basis for believing that it had occurred in this case. The court ruled that defense counsel could ask

-34-

Parker "in general if she expects to get anything," but not about her husband because "that's prejudicial."  (Tr. Vol.V, 1014.)

{¶ 34} The court allowed no testimony regarding a possible connection between her husband's prosecution and her decision to testify.  The court said: "If it has any relevance, it would be very little and overwhelmingly outweighed by the prejudicial effect."  (Tr. Vol.V, 1020.)  Defense counsel did not follow up with any related questions to Parker.

{¶ 35} Trial courts have wide latitude to impose reasonable limits on the scope of cross-examination based upon concerns for harassment, prejudice, confusion of the issues, and repetitive, marginally-relevant interrogation.  *State v. Foust*, 2d Dist. No. 20470, 2005–Ohio–440, ¶ 14, citing *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431.  Evid.R. 403(A) provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice."  The Supreme Court of Ohio has defined unfair prejudice as "that quality of evidence which might result in an improper basis for a jury decision."  *State v. Crotts*, 104 Ohio St.3d 432, 2004–Ohio–6550, ¶ 24.  "When considering evidence under Evid. R. 403, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of that discretion."  *State v. Allen*, 73 Ohio St.3d 626, 633, 1995–Ohio–283, citing *State v. Morales* (1987) 32 Ohio St.3d 252.

{¶ 36} Evid.R. 607(A) expressly allows any party to attack the credibility of a witness.  Evid.R. 607(B), however, requires a questioner to have a reasonable basis for asking an impeachment-related question that implies the existence of an impeaching fact.

{¶ 37} In his brief, appellant directs us to documents submitted to the trial court with his motion for new trial.  They include the November 2007 indictment against Parker's husband, Parker's agreement to withdraw her claim to seized weapons, and a motion indicating that Benjamin Parker pleaded guilty to the indicted charges in May 2008.  Appellant argues, "It is not a stretch that Rhonda Parker's motivation in testifying for the State of Ohio was to stay in the good graces of law enforcement following a major raid on her business, which she still owns."  We disagree.

{¶ 38} At trial, defense counsel offered no specific information about the federal prosecution and its connection to Parker's testimony about whether appellant was with her on the night of the murder in 1997.

Counsel could only speculate as to how Parker's testimony in 2010 in the state court could benefit her husband, who pleaded guilty to the federal charges in 2008 and was presumably serving a prison term in 2010 for crimes committed in 2004 to 2006. Parker had already been asked on direct examination whether she was receiving a benefit for testifying, a question the court interpreted to include any indirect benefit she might receive through her husband. Although the court permitted defense counsel to pursue further questioning in that regard, counsel did not do so. The trial court did not err by limiting defense counsel's cross-examination questions about benefits.

{¶ 39} Nor did the trial court err by denying defense counsel's request to question Parker about a possible connection between her husband's federal prosecution and the timing of her decision to testify for the prosecution in this case. The prosecution and the defense questioned Parker extensively about her initial statements to an investigator, her refusal (at least by 2000) to maintain the alibi, her eventual decision to testify for the prosecution, and her reasons for changing her story. Parker testified that she was married to Benjamin Parker by the time police arrived at her door to question her and admitted that she and Benjamin wanted to avoid having contact with police. We agree with the trial court that, whatever marginal benefit counsel's additional questioning could have provided, it was outweighed by the prejudice and confusion the irrelevant testimony about Benjamin Parker's criminal past could cause.

{¶ 40} In the end, we conclude that the trial court did not abuse its discretion by limiting defense counsel's cross-examination of Parker. Therefore, we overrule appellant's fifth assignment of error.

*State v. Clinkscale*, 2011-Ohio-6385. This decision cited indirectly to federal case law by citing to a state court decision and noting that the decision at issue was citing the Supreme Court decision *Delaware v. Van Arsdall.* Accordingly, it appears that the state court addressed the federal claims on the merits. However, the result would be the same under a modified AEDPA standard of review.

The Court of Appeals has set forth the interests that must be balanced in determining whether a court has met the requirements of the Confrontation Clause:

Where a trial court limits a defendant's cross-examination in a manner

-36-

that infringes upon the protections afforded by the Confrontation Clause, the court must balance the limitation against "the competing interests at stake."  *Lewis v. Wilkinson*, 307 F.3d 413, 421 (6th Cir. 2002) (internal quotation marks omitted).  These interests include the prevention of minitrials on collateral issues, including the victim's history, *see id.* at 422; *State v. Gardner*, 59 Ohio St.2d 14, 391 N.E.2d 337, 340 (1979); the probative or material value of the evidence toward the issues at trial, *see Lewis*, 307 F.3d at 422; *Gardner*, 391 N.E.2d at 340–41; the prejudicial or inflammatory nature of the evidence sought to be introduced, *see Gardner*, 391 N.E.2d at 340–41; *State v. Whiteside*, No. 19482, 2003 WL 21360247, at *6 (Ohio Ct. App. June 13, 2003) (unpublished opinion); whether the trial court offered a cautionary instruction and/or limited the scope of cross-examination, see *Lewis*, 307 F.3d at 422, as well as the extent to which the defendant was able to cross-examine the witness, *United States v. Hynes*, 467 F.3d 951, 959–60 (6th Cir. 2006); *Boggs v. Collins*, 226 F.3d 728, 745 (6th Cir. 2000); and, possibly, which party invoked the law's protections, *see Gardner*, 391 N.E.2d at 341; *Williams*, 487 N.E.2d at 563.

*Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 595 (6th Cir. 2012).  In addition, the *Lewis* decision, cited by the Court of Appeals in *Jones v. Warden*, states that when a trial court has placed limits on cross-examination directed toward a witness's motive to testify, a court must take two additional steps:

First, a reviewing court must assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of ... improper motive. Second, if this is not the case, and there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake.

*Lewis*, 307 F.3d at 421 (quoting *Boggs*, 226 F.3d at 739 (citations omitted)).

Here, the Ohio Court of Appeals concluded that the jury had enough information.  It concluded that the probative value of the excluded line of questioning was low.  Specifically, the court found that the line of questioning was speculative and that petitioner had failed to offer any specific information at trial regarding the federal prosecution of Mr. Parker and its relation to Rhonda Parker's testimony in petitioner's

-37-

trial. The Ohio Court of Appeals also noted that petitioner was permitted to cross-examine Rhonda Parker as to any benefit she received from changing her story. On direct examination, Rhonda Parker was asked whether she was receiving a benefit for testifying, and she testified that she was not receiving any benefit other than a $7 food voucher and her mileage for traveling to trial. *Trial Tr. (Doc. 8-7) at 999:2-20.* The trial court interpreted the questions about whether Rhonda Parker received any benefit to include whether she indirectly received a benefit by way of some sort of leniency for her husband. The trial court also permitted counsel for petitioner to inquire further into benefits she received, but counsel for petitioner did not pursue that line of questioning apart from the attempts to question her about her husband's indictment and prosecution. In addition, counsel for petitioner did question Rhonda Parker about why she changed her story and she admitted that she and her husband wanted to avoid contact with the police. *Trial Tr. (Doc. 8-7) at 1006:21 - 1008:9.* Lastly, the Ohio Court of Appeals concluded that the questioning specific to Mr. Parker would be prejudicial and cause confusion. After a careful review of the record and applicable law, it appears that the state court's application of federal law is not objectively unreasonable here, and petitioner is, therefore, not entitled to habeas relief based on Ground Four of petitioner's habeas petition.

### E. GROUND FIVE

Lastly, petitioner's fifth ground for relief is that he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments because there was insufficient evidence presented to sustain his convictions.

A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81–82 (S.D. Ohio September 28, 2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that

when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

*Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia* ] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). In *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id.* at 656.  *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007).  This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of Jackson."  *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d [347], 352 (6th Cir. 2006)).

Here, the Ohio Court of Appeals addressed this claim on its merits.  In doing so, it first noted and rejected specific arguments made by petitioner, concluding that they all went to the credibility of the witnesses and not to the sufficiency of the evidence given by those witnesses.  Following its conclusion that petitioner had not raised a proper sufficiency challenge, the court summarized a portion of the evidence that it concluded connected petitioner to the crimes.  The Ohio Court of Appeals set forth its reasoning as follows:

{¶ 29} We next address appellant's fourth assignment of error, in which he contends that his convictions are based on insufficient evidence because Williams was not credible.  Questions of witness credibility are irrelevant to the issue of whether there is sufficient evidence to support a conviction, however.  *State v. Ruark*, 10th Dist. No. 10AP–50, 2011–Ohio–2225, ¶ 21.  "In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Smith*, 10th Dist. No. 08AP–736, 2009–Ohio–2166, ¶ 26, citing *State v. Jenks* (1991), 61 Ohio St .3d 259, paragraph two of the syllabus, and *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 79.  Thus, appellant has not raised a proper sufficiency challenge.

{¶ 30} In any event, not only was Williams' testimony alone sufficient to support appellant's convictions, other evidence also connects him to the shooting.  Williams testified that appellant used a nine-millimeter gun during the shooting, and Hardy testified that there were four spent nine-millimeter gun shell casings found at the scene.  Appellant's DNA was on a hat found at the scene, and his fingerprints were on a game controller and booklet.  Lastly, Parker established that appellant created a false alibi, and this shows his consciousness of guilt.  *See State v. Issa*, 93 Ohio St .3d 49, 67, 2001–Ohio–1290.  Therefore, we conclude that appellant's convictions are based on sufficient evidence.  Accordingly, we

overrule appellant's fourth assignment of error.

*State v. Clinkscale*, 2011-Ohio-6385.  While the Ohio Court of Appeals did not cite to any federal court decisions when it analyzed petitioner's sufficiency of the evidence claim, it cited to *State v. Yarbrough*, 95 Ohio St. 3d 227, 2002-Ohio-2126, ¶76 (Ohio 2002), which specifically quotes the Supreme Court decision in *Jackson v. Virginia*, discussed above, to set forth the federal constitutional due process requirements for sufficiency of the evidence.  Furthermore, the state court of appeals identified the controlling legal principle as set out by the United States Supreme Court.

This Court's independent review of the trial transcript confirms that the state court's summary of the evidence is generally accurate.  First, Todne Williams testified in detail about petitioner's role in the crimes at issue, including her testimony about petitioner arriving at her house at about 11:00 p.m. on September 7, 1997 with his friend Darry Woods, about hearing a "gun sound" like a loud "pop," about petitioner running upstairs to where she was seconds after the gunshot and demanding money with a smoking 9 millimeter gun in his hand; about petitioner carrying her husband's safe outside; and about petitioner subsequently forcing her to go downstairs to where her husband had been shot and shooting her three times.  *Trial Tr. (Doc. 8-3) at 101:11 - 107:5; 119:14-24; 121:9 - 123:17; 124:2-25; 125:13 - 134:5.*  In addition, there was testimony about forensic evidence at the scene including DNA on a hat found at the scene that was consistent with petitioner's DNA and petitioner's fingerprints on a game controller and booklet.  While the forensic evidence did not necessarily place petitioner at the scene of the crime, it was consistent with petitioner being at the scene of the crime.  Furthermore, as discussed above, Rhonda Parker testified that petitioner asked her to create a false alibi.  Given this evidence, this Court must determine whether the state court unreasonably determined that there was enough evidence to permit a jury to find, beyond a reasonable doubt, that petitioner committed the crimes of which the jury convicted him.  The state court's decision on the sufficiency of the evidence question is

not unreasonable, and a proper application of federal law to the facts of this case.

A reasonable juror could have concluded, based on the testimony of Todne Williams, that petitioner was guilty. As discussed above, it is not for the Court to evaluate the credibility of Todne Williams, but rather whether her testimony provided sufficient evidence to permit the jury to find, beyond a reasonable doubt, that petitioner committed the crimes of which he was convicted. While the additional forensic evidence could have been considered corroborating physical evidence, in fact no additional corroboration of Todne Williams' testimony was needed in order to satisfy the constitutional minimum: "[t]he fact that no physical evidence linked [the defendant] to the scene is not dispositive of whether [he] was at the scene." *Hilliard v. Hudson*, 599 F. Supp. 2d 921, 932 (N.D. Ohio 2009); *see also Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) ("It is true that the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction.")

*Brown v. Davis* is particularly instructive. There, as the Court of Appeals noted, the defendant had been convicted of rape almost exclusively on the testimony of one eyewitness, whose credibility was substantially undercut by the fact that she knew the person she eventually named as her attacker but she did not provide his name to police when first questioned and that she had given another name to police before ultimately identifying the defendant as her assailant. Also, as the Court noted, "it may seem foolhardy and irrational for an undisguised man who is well known by the victim to attack her in a lighted room . . . ." *Id.* at 1147. The Court also noted the studies showing that eyewitness identifications can be unreliable and stated that it was "painfully aware of miscarriages of justice caused by wrongful identification." *Id.* at 1146. Nevertheless, because the only question before the Court was the constitutional sufficiency of the evidence, and because the jury could rationally have believed the victim's testimony, the Court denied relief, stating that "[t]he defense had every opportunity to cross-examine and impeach the victim's credibility. The issue of credibility, the demeanor of the parties, and the weighing of the evidence were properly for the jury."

*Id.* at 1147.  Because that question - and not "whether [the reviewing court] believes the evidence at the state trial established guilt beyond a reasonable doubt"—is the crux of the sufficiency of the evidence inquiry, the petitioner's claim was foreclosed.  *Id.*

The same is true here.  The Ohio Court of Appeals decision was not contrary to federal law, nor was it an unreasonable application of federal law.  Petitioner's Fifth Ground for relief is therefore without merit.

## VI.  RECOMMENDED DISPOSITION

For the foregoing reasons, the Court **RECOMMENDS** that the petition for a writ of habeas corpus be **DISMISSED**.

In addition, petitioner's request for discovery and an evidentiary hearing is **DENIED**.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp

-43-

United States Magistrate Judge